**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **RICHARD MICHAEL JONES,** | ) | |
| **ID # 1336902** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:07-CV-1984-P (BH)** |
| | ) | **ECF** |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge five October 11, 2005 convictions, two for aggravated assault with a deadly weapon and three for aggravated assault on a public servant in Cause Nos. F05-35513-R, F05-35514-R, F05-35515-R, F05-35516-R, and F05-35517-R. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

On August 9, 2005, the State handed down five indictments against petitioner for two aggravated assaults with a deadly weapon and three aggravated assaults against a public servant. (Transcript[F05-35513-PR]:2; Tr.[F05-35514-PR]:2; Tr.[F05-35515-PR]:2; Tr.[F05-35516-PR]:2; Tr.[F05-35517-PR]:2). Each of the indictments alleged that petitioner had previous been convicted

of a felony offense. *Id*. Petitioner made an open plea of guilty to the trial court to the charged offenses on October 11, 2005 (R. 2:10), and after hearing evidence on punishment on October 28, 2005, the trial court sentenced petitioner to fifteen-year sentences for each of the five convictions. (R. 3:125).

Petitioner's appellate attorney filed an *Anders* brief stating that there were no arguable grounds to advance and appeals to the five convictions would therefore be wholly frivolous. *See Anders v. Calfornia*, 386 U.S. 738 (1967). The Fifth District Court of Appeals agreed and affirmed the trial court's judgments in an unpublished memorandum opinion. *Jones v. State*, 05-05-01609-CR, 05-05-01610-CR, 05-05-01611-CR, 05-05-01612-CR, 05-05-01613-CR (Tex. App.–Dallas Sept. 26, 2006). On June 21, 2007, petitioner filed state applications for writ of habeas corpus in which he raised most of the same issues he now raises in his federal petition (State Habeas Transcript:2-15).[1] On October 17, 2007, the Court of Criminal Appeals denied petitioner's state applications without written order. *Id*. at cover.[2]

On November 19, 2007, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed an answer on April 25, 2008, asserting that petitioner's federal petition is partially unexhausted and without merit (*see* Answer), and provided the state-court records.

The evidence presented at the punishment hearing established that after returning home from

---

[1] Petitioner filed a state habeas application for each of his five convictions, and there are transcripts for each application. Because the contents of all of the transcripts are identical, the Court refers to them all as "State Habeas Transcript."

[2] The trial court did not make an findings of fact or conclusions of law with respect to petitioner's state habeas application.

a doctor's appointment on the afternoon of July 14, 2005, petitioner began drinking beer; this led to and exacerbated an ongoing argument with his teenage son. (R. 3:8-10). Petitioner had recently had gastric bypass surgery and was taking two medications for depression and anxiety due to the recent death of a family member. (R. 3:9, 35, 51, 66-68, 114). Petitioner's doctor testified that after gastric bypass surgery, the effects of alcohol would be at least two times stronger than before. (R. 3:65). Petitioner had been advised by his doctor not to drink alcohol while on these medications, but he testified that he had forgotten this medical advice and did not realize the effect alcohol would have on him after his surgery. (R. 3:69, 114).

After his wife returned home from work at around 6:00 p.m., petitioner's son, his younger daughter, his wife, and his mother-in-law attempted to cajole petitioner into ending the argument with his son. Instead, petitioner became angrier. (R. 3:39-40). He began swinging a two-by-four around in the house, broke the glass on the gun case, obtained some guns from the case, and fired a rifle several times into the ceiling of the house. (R. 3:29, 32, 40-42, 44, 54-55). Petitioner threatened his son by telling him that he had better get out of the house and then firing a gun into the ceiling. (R. 3:11-12, 43). Petitioner's mother-in-law left the house and called 911 from a neighbor's house across the street. Petitioner exited the house with at least two guns and threatened his mother-in-law by pointing one of the guns across the street and telling her that he would shoot her if she did not put the telephone down. (R. 3:56-58, 82, 90). Petitioner then smashed the T-top and windshield in his son's car with a tire arm and a gun. (R. 3:15, 44, 84).

Police officers responded to the 911 call, and a neighbor heard petitioner threaten an officer that he would kill him too. (R. 3:85). Another neighbor and two police officer also testified that they saw petitioner point a gun across the street where police officers were located. (R. 3:92, 99,

109). One of the police officers fired several shots at petitioner, hitting the car petitioner was crouched behind. (R. 3:99-100). Petitioner then threw the guns away and surrendered. (R. 3:100). Petitioner testified at the punishment hearing that he never fired a weapon outside of his house, he never intended to shoot anyone, the guns he took outside were not loaded, and he would never have harmed a police officer because he has two brothers who are police officers. (R. 3:115-117). Petitioner was charged with the aggravated assault of his son, his mother-in-law, and three police officers. (Transcripts at 2).

**C. Substantive Issues**

Petitioner asserts that: (1) his plea of guilty was improperly induced; (2) he was involuntarily intoxicated at the time of the assaults; (3) his trial counsel provided ineffective assistance of counsel; (4) the trial court erred in rendering its judgment because petitioner did not understand the consequences of pleading guilty; and (5) defendant's double jeopardy rights were violated because he was prosecuted more than once for substantially the same offense. (Pet. at 7).

**D. Exhaustion**

Respondent contends that petitioner has failed to exhaust a portion of his ineffective assistance of counsel ground for relief at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writs constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies

Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. VOLUNTARINESS OF PLEA

In his first and fourth grounds for relief, petitioner essentially asserts that his guilty pleas were involuntary because he was induced to plead by the belief that he would receive probation if he pled guilty and he did not understand the nature or consequences of pleading guilty.

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Therefore, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative

showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Id.* (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See Daniel v. Cockrell*, 283 F.3d 697, 702-03 (5th Cir.), *cert. denied*, 537 U.S. 874 (2002); *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Taylor*, 933 F.2d at 329. A guilty plea "entered by one fully aware of the direct consequences . . . must

stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam).

Petitioner first contends that his plea was involuntary because he was improperly induced into believing that he would receive probation. However, as supporting evidence for this assertion, petitioner points to excerpts from the punishment hearing, which occurred several weeks after his guilty pleas to the five assault charges and the trial court's acceptance of his pleas. The excerpts include questions to petitioner regarding whether he could live up to the terms of probation if he was given the chance and whether he was asking the trial judge to place him on probation. (R. 3:119, 121) These excerpts are not evidence that petitioner was expecting to be placed on probation. Moreover, during the plea hearing, the trial court admonished petitioner regarding the range pf punishment for each charge, and petitioner testified that no one had promised him anything in exchange for his guilty pleas (R. 2:4, 5, 10). Guilty pleas are not rendered involuntary because a defendant pleads guilty out of a desire to limit the possible penalty after being advised by competent counsel that a plea would be to the defendant's advantage. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The record does not support petitioner's assertion that he was induced to plead guilty with the expectation that he would receive probation.

Petitioner further contends that his pleas were involuntary and should not have been accepted

by the trial court because he did not understand the nature or consequences of pleading guilty. Contrary to this contention, however, petitioner had signed judicial confessions in all five cases admitting to each of the charged offenses as well as the enhancement paragraph that were admitted into evidence at the plea hearing. (R. 2:State's Ex. #1). In the plea agreements signed by petitioner and also admitted into evidence, he was admonished about the sentence ranges for each offense, pled true to the enhancement paragraph, pled guilty to the charged offenses, and was admonished about the consequences of his guilty pleas and pleas of true, including the lack of a recommendation by the State regarding punishment. (R. 2:State's Ex. #2). The plea agreements themselves also state immediately above petitioner's signature that his pleas of guilty and waivers of rights were knowingly, freely, and voluntarily made. (R. 2:State's Ex. #2). At the plea hearing, the trial judge again explained each charge to petitioner and the punishment ranges for each offense, and upon questioning by the trial court, petitioner affirmatively stated that he understood everything that had occurred at the hearing. (R. 2:4-5, 11). Moreover, petitioner stated on the record at the plea hearing that he was pleading guilty to the charged offenses and true to the enhancement paragraph. (R. 2:10).

Petitioner has not overcome the presumption of regularity and "great weight" accorded state-court records. *See Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that state-court records are accorded "great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that state-court records are entitled to a "presumption of regularity"). The record does not support petitioner's assertions that his pleas were involuntary because he was led to believe that he would receive probation or because he did not understand the consequences of pleading guilty. Petitioner was admonished by the trial court about the consequences of the plea agreements and the sentence ranges, and he made knowing and voluntary pleas of guilty. The Court of Criminal

Appeals denied petitioner's state application for writ of habeas corpus on its merits, and this denial is not contrary to federal law. (S.H.Tr.:cover). Accordingly, petitioner's claim entitles him to no habeas relief.

## IV. INVOLUNTARY INTOXICATION

In his second ground for relief, petitioner asserts that he was involuntarily intoxicated at the time of the assaults to which he pled guilty. Specifically, petitioner contends that he was involuntarily intoxicated at the time the assaults occurred, due to the prescription medication and alcohol he had consumed after having had gastric bypass surgery. From this contention, this Court infers that petitioner is arguing that he therefore should not have been permitted to plead guilty, and that the pleas should not have been accepted by the trial court.

Under Texas law, involuntary intoxication constitutes an affirmative defense to prosecution when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant, and as a result of the intoxication, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law. *Torres v. State*, 585 S.W.2d 746 (Tex. Crim. App. 1979). Moreover, some Texas courts have recognized the affirmative defense of involuntary intoxication by prescription medication taken voluntarily by an individual if the individual has taken the medication according to the prescription and had no knowledge of the possible intoxicating side effects of the medication. *See Mendenhall v. State,* 15 S.W.3d 560, 565 (Tex. App.–Waco 2000, no pet.); *Heard v. State,* 887 S.W.2d 94, 98 (Tex. App.–Texarkana 1994, pet. ref'd); *Spriggs v. State*, 878 S.W.2d 646, 649 (Tex. App.–Corpus Christi 1994, no pet.); *Shurbet v. State*, 652 S.W.2d 425, 428 (Tex. App.–Austin 1982, no pet.).

Petitioner argues that he was involuntarily intoxicated because he had recently had gastric

bypass surgery, which his doctor testified causes a person to become intoxicated quicker, and coupled with the prescription medication and alcohol he ingested, this caused him to be intoxicated with no knowledge he could become intoxicated. Petitioner has neither alleged nor shown that at the time of the assaults, he did not know right from wrong as a result of his intoxicated state, however. In addition, the doctor who prescribed the medication for anxiety and depression for petitioner testified that he informed petitioner that he should not consume alcohol while taking this medication. (R. 3:69). Indeed, petitioner acknowledged when he testified at the punishment hearing that he had forgotten that he was not supposed to drink while on this medicine. (R. 3:114). Petitioner did not take the prescription medication as prescribed, but instead combined it with alcohol. Petitioner has therefore not shown that he would have been entitled to assert the affirmative defense of involuntary intoxication, much less that he would have prevailed had it been asserted. The state habeas court denied this ground on its merits, and this decision is not contrary to federal law. Relief should be denied on this claim.

## V. DOUBLE JEOPARDY

In his fifth ground for relief, petitioner asserts that the five indictments against him violated his rights under the double jeopardy clause of the constitution because he was prosecuted for substantially the same offense in each one.

The double jeopardy clause of the Fifth Amendment prohibits a person from be prosecuted twice for the same offense. *See* U.S. CONST. amend. V; *Benton v. Maryland*, 395 U.S. 784 (1969). The Double Jeopardy Clause protects against multiple prosecutions and punishments for the same offense. *See Monge v. California*, 524 U.S. 721, 727 (1998). More specifically, "the double jeopardy clause serves three interests, protecting against: (1) prosecution of the same offense after

acquittal; (2) prosecution of the same offense after conviction; and (3) multiple punishments for the same offense." *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992).

Despite his arguments, petitioner has neither been prosecuted twice nor received multiple punishments for the same offense. The State merely charged and prosecuted petitioner for five separate assaults. That they occurred at approximately the same time does not preclude separate prosecutions for each assault. On the face of the five indictments, it is apparent that petitioner was charged with five different offenses because each indictment alleges a separate assault on a separate victim. The state habeas court denied this claim on its merits, and this denial is not contrary to federal law. Petitioner is entitled to no relief on the basis of this claim.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third ground for relief, petitioner asserts that he received ineffective assistance of counsel at trial because: 1) counsel failed to object to testimony given by two witnesses at the punishment hearing; 2) counsel failed to file a motion requesting that probation be considered; 3) counsel failed to request a competency hearing; 4) counsel failed to raise an insanity defense; and 5) counsel failed to file a motion to dismiss the indictments. In addition to contending that this ground for relief is without merit, respondent asserts that petitioner has failed to exhaust his claims that his attorney erred in failing to raise an insanity defense and in failing to file a motion to dismiss the indictments, and that these claims are procedurally barred.[3]

Because it appears that petitioner is entitled to no habeas relief on the allegedly unexhausted

---

[3] Respondent construes petitioner's claim for relief regarding the indictments to be a claim that the trial court erred in accepting the indictments and petitioner's guilty pleas. However, petitioner bases this claim on a federal rule of criminal procedure that refers to trial counsel's responsibility to file a motion to dismiss an indictment that is defective. Accordingly, this Court will construe this claim as an a claim that counsel was ineffective for failing to do so. *See* FED. R. CRIM. PROC. 12(a)(3).

claims, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

Guilty pleas are "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). With respect to guilty pleas, "[c]ounsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). However, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent char-

> acter of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

To successfully state a claim of ineffective assistance of counsel under existing precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

**A. <u>Failure to Object to Testimony</u>**

Petitioner first asserts that his trial counsel was ineffective for failing to object to a statement made by the district attorney that petitioner was willing to use a rifle on police. Petitioner also contends that his attorney should have objected to the testimony of his neighbor, whom petitioner alleges exaggerates "beyond belief."

With regard to the statement made by the prosecutor, petitioner refers to a question to one of the responding police officers whether it appeared to him that petitioner was in an extreme rage and was willing to use his rifle. The officer responded affirmatively. (R. 3:111). Petitioner appears to contend that this question was objectionable because it called for speculation. However, even

assuming it was objectionable, petitioner has failed to establish that counsel was ineffective. Moreover, petitioner has failed to show prejudice because he has failed to show that had counsel objected and the objection been sustained, he would have received a lesser sentence. First, one of petitioner's neighbors testified that petitioner threatened to kill one of the officers, and two of the officers and another neighbor testified that petitioner pointed a gun in the direction of some of the officers. (R. 3:85, 92, 99, 109). Accordingly, there was already substantial evidence to support petitioner's pleas of guilty to the three indictments alleging that he intentionally or knowingly threatened police officers with imminent bodily injury. Second, counsel elicited testimony from petitioner that the guns he brought outside were not loaded and that he had no intention of hurting anyone. (R. 3:115-17). Looking at the totality of counsel's representation, petitioner has failed to meet the *Strickland* standard.

With regard to petitioner's claim that his attorney was ineffective for failing to object to the neighbor's testimony, petitioner points to two instances in the record when his attorney questioned his mother-in-law *about* the neighbor's tendency to exaggerate. In response to defense counsel's questions, the mother-in-law testified that the neighbor had a tendency to exaggerate, and that while her testimony would not be unreliable and untrue, it would be dramatic and might have things added to it. (R. 3:61-2). Therefore, defense counsel brought out testimony that the neighbor exaggerated things. Petitioner has not shown how the neighbor's testimony could have been further impeached or objected to. She was an eyewitness to the events, and she gave her sworn testimony at the punishment hearing, subject to cross-examination. Indeed, during cross-examination, defense counsel elicited testimony that while she believed that petitioner fired a gun at the police officers, she did not see him do this, and it was possible that the shot she heard was the officer firing at

petitioner. (R. 3:86-87). Moreover, the neighbor was not the only eyewitness. The mother-in-law testified that petitioner threatened to shoot her, although she also stated that he did not mean it because he was drunk. (R. 3:58-60). Given that counsel elicited testimony that the neighbor had a tendency to exaggerate things and cross-examined her on specific points of her testimony about which she did not have first-hand knowledge, petitioner has not shown that counsel was ineffective in his approach to her testimony.

**B. <u>Failure to File Motion Requesting Probation</u>**

Petitioner next asserts that his attorney was ineffective for failing to file a pre-trial motion for probation. However, under Texas law, such a motion is required on when a jury will be determining a defendant's punishment and not when the trial judge determines punishment. *See* TEX. CODE CRIM. PROC. ANN. § 42.12 §§§ 3, 4(e), 5 (Vernon 2003). Because the trial court determined punishment at petitioner's trial, such a motion was unnecessary, and trial counsel was therefore not ineffective for failing to file such a motion.

**C. <u>Failure to Request Competency Hearing</u>**

Petitioner further asserts that his attorney was ineffective for failing to request a hearing to determine petitioner's competency to stand trial.[4] The Supreme Court has held that due process requires that a criminal defendant be competent to stand trial before he is prosecuted. *Cooper v. Oklahoma*, 517 U.S. 348 (1996). Specifically, the Supreme Court has stated that the appropriate test is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of

---

[4] Petitioner refers to a federal statute, 18 U.S.C. 4241(A), but this Court construes this argument liberally as an argument that counsel was ineffective for failing to request a competency hearing under state law.

the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Before a federal habeas court has any duty to investigate a claim of incompetency, a petitioner must present sufficient facts that positively establish a legitimate doubt regarding the petitioner's ability to meaningfully participate and cooperate with counsel during trial. *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir. 1996).

Petitioner has failed to allege any facts that raise a legitimate doubt as to his ability to consult with his lawyer about the charges against him or any facts that raise a doubt as to whether at the time of his trial he had a rational and factual understanding of the proceedings. To the contrary, petitioner testified at both the plea and the punishment hearing and expressed himself in a rational manner, indicating that he knew what he was being charged with and the factual circumstances of the cases against him. (R. 2:4-10; R. 3:113-123). Petitioner has therefore failed to establish that his attorney was ineffective for failing to request a competency hearing, as counsel is not ineffective for failing to file frivolous motions. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).[5]

**D. <u>Failure to Raise Insanity Defense</u>**

Petitioner next contends that counsel was ineffective for failing to raise an insanity defense. Under state law, it is an affirmative defense to prosecution that at the time of the conduct charged, a defendant, as a result of a severe mental disease or defect, did not know that his conduct was wrong. *See* TEX. PENAL CODE ANN. § 8.01(a) (Vernon 1973). Petitioner has neither alleged nor shown that he suffers from or did suffer from a severe mental disease or defect such that he did not

---

[5] To the extent that petitioner is also asserting that the trial court erred in not *sua sponte* ordering a competency hearing, this claim is also without merit, as the record does not reflect that the trial judge ever received information that created a "bona fide" doubt as to the petitioner's competency and alerted the judge to the possibility that petitioner could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense. *See Drope v. Missouri*, 420 U.S. 162, 180-82 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980).

know that his conduct was wrong on the day of the assaults. Indeed, petitioner himself testified at the punishment hearing that he was not insane when the incident occurred, but instead testified that his behavior was an aberration. (R. 3:114). Moreover, he apologized for his conduct and promised never to drink alcohol again. (R. 3:116, 119, 121, 122). Petitioner has therefore neither shown that he was entitled to this defense nor has he shown that his attorney had any indication that this would be a promising line of defense. Accordingly, petitioner has not proven that his attorney was ineffective for failing to raise this defense. *Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988) (holding that counsel in not ineffective for failing to raise insanity as a defense where the record did not reflect that there was any indication or evidence presented or evident to the attorney that this was a viable defense).

**E. Failure to File Motion to Dismiss Indictments**

Finally, petitioner asserts that his trial counsel was ineffective for failing to file a motion to dismiss the indictments against him as defective under Federal Rule of Criminal Procedure 12.

Construed liberally, petitioner appears to be arguing that the indictments against him were defective because he was indicted for the same offense five times. As addressed earlier, however, petitioner was indicted for five separate assaults that occurred during a short period of time. He was therefore not charged with the same offense five times, and counsel was not ineffective for failing to file a motion to dismiss the indictments on this basis. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) (the failure to make meritless objections does not constitute deficient performance). Moreover, in his plea agreements, petitioner waived any defects, errors, or irregularites in the indictments, so to the extent that he is arguing that the indictments contained some other defect, this claim was waived by his voluntary and knowing guilty pleas. (R. 2:State's Ex. #2).

The state court denied relief on petitioner's ineffective assistance of counsel claims on their merits. (S.H.Tr.:cover). This denial is not contrary to federal law, and petitioner's claims of ineffective assistance of counsel entitle him to no habeas relief.

## VII. STATE CONSIDERATION OF CLAIMS

Petitioner raised most of his claims in his state writ. The Court of Criminal Appeals denied the state writ on its merits, and petitioner's claims were therefore adjudicated on the merits. The decision at the state level is consistent with, and involved no unreasonable application of, applicable Supreme Court precedent. The adjudication of his claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in his petition.

## VIII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED on this 27th day of April, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE